**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

DACK DOWNING,

       *Plaintiff,*

v.

       Case No. 25-2225-EFM-BGS

SHANNON THOMPSON and WESTERN
FLYER EXPRESS, LLC,

       *Defendants.*

**MEMORANDUM AND ORDER**

In this truck accident case before the Court on diversity jurisdiction, Plaintiff Dack Downing asserts negligence claims against driver Defendant Shannon Thompson and her employer, Western Flyer Express, LLC ("WFX"). Presently, Plaintiff brings two motions before the Court. First, Plaintiff brings a Motion for Reconsideration (Doc. 52) of the Court's Order[1] dismissing Count III of Plaintiff's Second Amended Complaint, which was brought against WFX. Second, Plaintiff brings a Motion for a Certificate of Appealability (Doc. 53) in the event the Court denies his Motion for Reconsideration. WFX opposes both motions. For the reasons stated below, the Court denies both of Plaintiff's motions.

---

[1] *See Downing v. Thompson*, 2025 WL 3652968 (D. Kan. Dec. 17, 2025); Doc. 51.

## I.    Legal Standards

### A.    Motion for Reconsideration

The Court has discretion whether to grant a motion to reconsider.[2] The Federal Rules of Civil Procedure do not formally recognize a "motion to reconsider."[3] D. Kan. Rule 7.3 governs motions to reconsider non-dispositive orders, and Fed. R. Civ. P. 59(e) and 60 govern motions to reconsider dispositive orders.[4] The standard is nearly identical under both rules.

A party may seek reconsideration on the following grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice.[5] While a motion to reconsider is available where the court has "misapprehended a party's position, the facts or applicable law, or where the party produces new evidence that it could not have obtained earlier through the exercise of due diligence," such a motion is "not a second opportunity for the losing party to make its strongest case, to rehash arguments or to dress up arguments that previously failed."[6]

### B.    Certifying an Interlocutory Appeal

In general, parties may only appeal a federal district court's final decision.[7] But 28 U.S.C. § 1292 grants appellate jurisdiction to federal courts of appeals to hear interlocutory

---

[2] *See Hancock v. City of Okla. City*, 857 F.2d 1394, 1395 (10th Cir. 1988).

[3] *See Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991).

[4] D. Kan. R. 7.3; *Coffeyville Res. Refin. & Mktg., LLC v. Liberty Surplus Ins. Corp.*, 748 F. Supp. 2d 1261, 1264 (D. Kan. 2010).

[5] D. Kan. R. 7.3; *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir. 1995)).

[6] *Bedivere Ins. Co. v. Blue Cross & Blue Shield of Kan., Inc.*, 491 F. Supp. 3d 929, 936 (D. Kan. 2020) (citations omitted).

[7] *See* 28 U.S.C. § 1291 (restricting court of appeals jurisdiction to district courts' final decisions).

appeals under specified circumstances. Relevant here, section 1292(b) authorizes district judges to certify an order for interlocutory appeal when that judge is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." This is a three-part test, for which "[t]he proponent of an interlocutory appeal bears the burden of establishing that all three of section 1292(b)'s substantive criteria are met."[8]

Whether to certify an order for interlocutory appeal is within the discretion of the district judge.[9] Nevertheless, district courts should only certify orders for interlocutory appeal in "extraordinary cases in which extended and expensive proceedings probably can be avoided by immediate final decision of controlling questions encountered early in the action."[10] If the court grants certification, it may in its discretion enter an order staying the proceedings while the appeal is pending.[11]

## II.    Analysis

## A.    Plaintiff's Motion for Reconsideration

Plaintiff first moves for reconsideration of the Court's Order dismissing Count III of Plaintiff's Second Amended Complaint, where Plaintiff brought a negligence *per se* claim and sought attorneys' fees under K.S.A. 66-176. Plaintiff raises three points where he argues the Court

---

[8] *KPH Healthcare Servs., Inc. v. Mylan N.V.*, 2022 WL 16551340, at *1 (D. Kan. Oct. 31 2022) (citation omitted and cleaned up).

[9] *See id.*; *see also Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995) (explaining that when it enacted § 1292(b), "Congress thus chose to confer on district courts first line discretion to allow interlocutory appeals").

[10] *Utah ex rel. Utah State Dep't of Health v. Kennecott Corp.*, 14 F.3d 1489, 1495 (10th Cir. 1994) (further citation and quotations omitted).

[11] 28 U.S.C. § 1292(b).

erred in dismissing Count III or otherwise misapprehended his arguments in response to WFX's motion to dismiss. The Court addresses each of Plaintiff's points in turn.

      1.      *Count III as Based on Violations of Federal Motor Carrier Safety Regulations ("FMCSRs")*

In his first point, Plaintiff argues the Court clearly erred in determining Plaintiff's claims were based on violations of the FMCSRs and misapprehended Plaintiff's argument to the contrary. WFX's motion to dismiss primarily challenged Count III as improperly based on FMCSRs. Plaintiff had the opportunity to explain its argument to the contrary on this point in his response. There, Plaintiff first explained how the bullet-pointed list of regulations and statutes he cited in one paragraph of Count III should be read to connect back to Kansas statutes contained in Chapter 66. The Court recounted Plaintiff's explanation in its Order dismissing Count III.[12]

In dismissing Count III, the Court did not misapprehend Plaintiff's argument; the Court rejected it as a "creative attempt" to avoid precedent in this District prohibiting a plaintiff from bringing a private cause of action premised on a violation of FMCSRs.[13] Plaintiff rehashes and dresses up his previous arguments on this point to argue that the Court's rejection is clear error, but this is not a proper basis for reconsideration.[14] Plaintiff's *arguendo* discussion that he should be permitted to premise a claim solely on a violation of FMCSRs is also an inappropriate basis for reconsideration. This discussion is a second attempt by Plaintiff to make his strongest case.[15] Accordingly, the Court declines to reconsider its ruling based on Plaintiff's first point.

---

[12] *See Downing*, 2025 WL 3652968, at *3.

[13] *Id.* (citing *Stewart v. Mitchell Transp.*, 241 F. Supp. 2d 1216, 1220 (D. Kan. 2002); *Drake v. Old Dominion Freight Line, Inc.*, 2016 WL 1328941, at *4 (D. Kan. Apr. 5, 2016); *Chavez-Matchie v. Jack Cooper Transp. Co.*, 2017 WL 2378334, at *3 (D. Kan. June 1, 2017); *Kobilan v. Colter*, 2017 WL 4843292, at *3 (D. Kan. Oct. 26, 2017)).

[14] *Bedivere Ins. Co.*, 491 F. Supp. 3d at 936 (citations omitted).

[15] *Id.*

### 2. K.S.A. 66-176 as Interpreted by the Kansas Court of Appeals

In his second point, Plaintiff argues the Court "clearly erred in determining that K.S.A. 66-176 does not apply to a personal injury action."[16] This somewhat misstates what the Court determined. In dismissing Count III, the Court did not determine that K.S.A. 66-176 itself does not apply to any personal injury action. Rather, the Court determined Plaintiff's claim in Count III under K.S.A. 66-176 was—in reality—premised on violations of FMCSRs, upon which there is no private cause of action available. Nonetheless, Plaintiff urges this Court to consider his second point by analyzing a Kansas Court of Appeals decision issued in 1991, *Dietz v. Atchison, Topeka and Santa Fe Railway Company*.[17]

*Dietz* involved a different procedural posture compared to the facts in this case. In *Dietz*, a driver of a tractor trailer truck carrying an anhydrous ammonia tanker drove into the side of a slow-moving freight train and was killed.[18] The driver's family brought a wrongful death action against the railway company, alleging it was negligent in failing to place active warning devices at the crossing to warn drivers of a train's presence.[19] The district court granted the railway company's motion for summary judgment, concluding the driver was negligent *per se* for failing to comply with Kansas regulations at the time requiring him to stop, look, and listen before proceeding across the crossing.[20] The district court held the driver's failure to comply with the Kansas regulations

---

[16] Doc. 52 at 7.

[17] 16 Kan. App. 2d 342, 823 P.2d 810 (1991).

[18] *Id.* at 813.

[19] *Id.*

[20] *Id.* (citing K.A.R. 82-4-2; 82-4-3(a)(3) (1990) (requiring compliance with 49 C.F.R. § 392.10(a) (1990))).

were the direct and proximate cause of the accident as opposed to any inaction by the railway company.[21]

In affirming the district court's ruling, the Kansas Court of Appeals addressed K.S.A. 66-176.[22] The appellate court determined:

> A plain reading of 66–176, however, indicates the legislature clearly intended to create, on behalf of "any person or corporation" injured as a direct result of a common carrier's violation of provisions of law regulating common carriers, an individual right of action against the common carrier. This right is in addition to the potential imposition of other penalties.[23]

Accordingly, the appellate court reasoned "[i]f [the railway] could file an action against [the driver] for damages, they could use [the driver]'s negligence as a defense in this action" and upheld the district court's ruling.[24]

Plaintiff argues *Dietz* is determinative here because the regulations at issue in *Dietz* involved a FMCSR. But the Court considers *Dietz* distinguishable from Plaintiff's pleading in Count III. *Dietz* involved Kansas regulations that specifically required compliance with the FMCSR at issue.[25] Conversely, Plaintiff's cited Kansas regulations incorporate FMCSRs by reference, but do not contain language requiring compliance.[26] The duties that Plaintiff argues are imposed on WFX in Count III are imposed solely by the FMCSRs themselves, not the Kansas

---

[21] *Id.*

[22] *Id.* at 814–15.

[23] *Id.* at 815.

[24] *Id.* at 815, 817 (upholding the district court's determination that the driver's own negligence *per se* was the proximate case of his accident).

[25] *See id.* at 814 (citing K.A.R. 82-4-2; 82-4-3(a)(3) (1990)); *see also Jahnke v. Blue Cross & Blue Shield of Kan., Inc.*, 51 Kan. App. 2d 678, 353 P.3d 455, 464 (2015) (describing *Dietz* as involving a violation of "a Kansas Corporation Commission regulation requiring drivers hauling hazardous materials to stop, look, and listen at railroad crossings").

[26] *See generally* K.A.R. 82-4-3f; 82-4-3h.

regulations Plaintiff cites in the Second Amended Complaint. Ultimately, the Court is not persuaded that *Dietz* overcomes the weight of authority in cases decided in this District, three in which plaintiffs identified K.S.A. 66-176 as the basis for their claim for attorneys' fees.[27] Accordingly, the Court declines to reconsider its ruling based on Plaintiff's second point.

3.    *K.S.A. 66-176 and K.S.A. 8-1528(b)*

In his third point, Plaintiff argues the Court clearly erred in determining that a violation of K.S.A. 8-1528(b) cannot form the basis of a claim under K.S.A. 66-176. Plaintiff argues K.S.A. 8-1528(b), a traffic law that criminalizes a driver's failure to stop at a stop sign,[28] is a provision of law for the regulation of common carriers within the meaning of K.S.A. 66-176.

In considering the meaning of K.S.A. 66-176, the Court is mindful of Kansas's approach to interpreting statutory language:

> The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. We first attempt to ascertain the legislative intent by reading the plain language of the statutes and giving common words their ordinary meaning. When a statute is plain and unambiguous, we do not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. But when the statute's language or text is unclear or ambiguous, we employ canons of construction, legislative history, or other background considerations to divine the legislature's intent and construe the statute accordingly.
>
> However, even if the language of the statute is clear we must still consider various provisions of an act in pari materia with a view of reconciling and bringing those provisions into workable harmony if possible. Additionally, we must construe statutes to avoid unreasonable or absurd results, and we presume the legislature does not intend to enact useless or meaningless legislation.[29]

---

[27] *See Drake*, 2016 WL 1328941, at *4; *Chavez-Matchie*, 2017 WL 2378334, at *3; *Kobilan v. Colter*, 2017 WL 4843292, at *3.

[28] K.S.A. 8-1528; 2116(b).

[29] *N. Nat. Gas Co. v. ONEOK Field Servs. Co.*, 296 Kan. 906, 296 P.3d 1106, 1115 (2013) (citations and quotation marks omitted).

Turning to the plain language of K.S.A. 66-176, it concerns "any of the provisions of law for the regulation of . . . common carriers." Focusing on the word "for," the Court agrees with Plaintiff that the ordinary meaning of "for" indicates purpose.[30] But Plaintiff goes on to argue the ordinary meaning of the word "for" encompasses any law that has the *effect* of regulating the conduct of common carriers, which would include generally applicable traffic laws such as K.S.A. 8-1528(b). Such an interpretation, however, would imply other laws effectively regulating the conduct of common carriers (i.e., K.S.A. 21-101, *et seq.*) could form the basis of a claim for attorneys' fees under K.S.A. 66-176. The Court is skeptical that the Kansas legislature intended to create such an expansive cause of action in K.S.A. 66-176.

So where are the provisions of law with the *purpose* of regulating common carriers contained? K.S.A. 66-176 itself does not specify. But the Kansas regulations attributable to Chapter 66—where K.S.A. 66-176 itself is located—are the obvious answer. In Chapter 66, the Kansas legislature defines the duties of the Kansas Corporation Commission ("KCC") and grants the agency authority to adopt rules and regulations for common carriers.[31] Those rules and regulations are found within Article 4 of the KCC regulations.[32] The Kansas legislature did not grant the KCC authority to enact rules and regulations elsewhere, and it certainly did not grant the KCC authority to enact the generally applicable traffic statutes contained in Chapter 8. To read

---

[30] Doc. 52 at 12 (citing "For," *The Oxford American Desk Dictionary and Thesaurus* (Berkley Books, 2d ed. 2001).

[31] K.S.A. 66-1,129(a).

[32] K.A.R. 82-1-1 *et seq.*

K.S.A. 66-176 as including traffic statutes not otherwise attributable to Chapter 66[33] impermissibly stretches the statute beyond its plain language. Thus, the Court is not persuaded it clearly erred in determining K.S.A. 8-1528(b) is not a provision of law for the regulation of common carriers within K.S.A. 66-176's meaning.

This conclusion is not inconsistent with Kansas case law, albeit because Kansas case law is largely silent on the matter. The closest case Plaintiff identifies is *Western Kansas Express, Inc. v. Dugan Truck Line, Inc.*,[34] which Plaintiff cites for the proposition that "the Kansas Court of Appeals has already determined that *statutes* regulating common carriers fall within the scope of 'provisions of law for the regulation' of common carriers."[35] The statutes *Western Kansas Express, Inc.* goes on to cite, however, are the ones found at K.S.A. 66-1,108 *et seq.*, not the traffic statutes found in Chapter 8.[36] If anything, *Western Kansas Express, Inc.*, supports the Court's conclusion that K.S.A. 66-176 concerns only provisions attributable to Chapter 66. Absent any clear authority from Kansas courts supporting Plaintiff's position, the Court is not persuaded it clearly erred.

Plaintiff also notes that Kansas law views a violation of traffic laws as supporting a negligence *per se* claim without regard to K.S.A. 66-176, citing jury instructions and case law alike. Fair enough. But Plaintiff did not plead negligence *per se* based on K.S.A. 8-1528(b) without regard to K.S.A. 66-176 in the Second Amended Complaint. Rather, Plaintiff tacked it on at the

---

[33] Plaintiff argues—and the Court previously recognized—that K.S.A. 8-1528(b) is an applicable traffic law as described by 49 C.F.R. § 392.2. *Downing*, 2025 WL 3652968, at *3 n.24. The Court agrees with Plaintiff that a violation of K.S.A. 8-1528(b) would constitute a violation of 49 C.F.R. § 392.2, if Plaintiff were able to assert a private cause of action based on the FMCSR. This point, however, is moot in light of the Court's determination that Plaintiff cannot do so here.

[34] 11 Kan. App. 2d 336, 720 P.2d 1132 (1986).

[35] Doc. 52 at 11 (emphasis in original).

[36] *W. Kansas Exp., Inc.*, 720 P.2d at 1136 ("In addition to the general authority to regulate public utilities and common carriers given the KCC under K.S.A. 66–111 and 66–129, statutory provisions regulating public motor carriers are found at K.S.A. 66–1,108 *et seq.*, in some 38 separate provisions.").

end of his K.S.A. 66-176 claim by identifying it as a provision of law for the regulation of common carriers.[37] Because the Court is not persuaded it clearly erred in determining that K.S.A. 8-1528(b) is not a provision of law "for the regulation of . . . common carriers," the Court declines to reconsider its ruling on Count III based on Plaintiff's third point.

Overall, Plaintiff's Motion for Reconsideration is denied. Thus, the Court next addresses Plaintiff's Motion to Certify an Interlocutory Appeal.

**B.      Plaintiff's Motion to Certify an Interlocutory Appeal**

Plaintiff next requests the Court certify an interlocutory appeal under 28 U.S.C. § 1292(b) on the following questions:

1.   Does Kansas law permit a plaintiff, under K.S.A. 66-176, to pursue a negligence per se claim and seek attorney fees for violations of either the Kansas or Federal motor carrier safety regulations?

2.   Does Kansas law permit the use of K.S.A. 66-176 in a personal injury action?

3.   Can a violation of a statute applicable to all drivers, such as K.S.A. 8-1528, form the basis for a negligence per se action under K.S.A. 66-176?

Plaintiff argues he has met his burden to demonstrate all three parts of section 1292(b) are satisfied. WFX argues Plaintiff has not done so. The Court addresses each part of the three-part test under section 1292(b) in turn.

*1.      Controlling Question of Law*

The first section 1292(b) requirement is that the order involve a controlling question of law.[38] "A question of law involves the meaning of a statute, constitution, regulation, or common-

---

[37] Doc. 26 at 10, ¶ 57.

[38] 28 U.S.C. § 1292(b).

law doctrine, as opposed to a question of fact."[39] And a question of law "is controlling if resolution of the issue on appeal could materially affect the outcome of litigation in district court"[40] or where "its incorrect disposition would require reversal of a final judgment."[41]

Here, the Court agrees with Plaintiff that he has presented a question of law surrounding the meaning of K.S.A. 66-176. The Court is also inclined to agree with WFX that its dismissal of Count III does not affect Plaintiff's ability to further litigate his claims in Count I and II. But, should Plaintiff make a successful appeal, it would require reversal of the Court's final judgment as to Count III. Accordingly, the Court determines Plaintiff meets his burden to demonstrate a controlling question of law is at issue.

### 2.  Substantial Ground for Difference of Opinion

The second section 1292(b) requirement is that there be a substantial ground for difference of opinion on the issue.[42] This exists when the relevant question of law "is difficult, novel, and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decision."[43] Contradictory caselaw, by itself, does not qualify a case for certification.[44] Rather, a party must satisfy this requirement be presenting a "colorable" argument in support of its position.[45] To determine if a party's argument is "colorable," this Court

---

[39] *Freedom Transp., Inc. v. Navistar Int'l Corp.*, 2020 WL 108670, at *3 (D. Kan. Jan. 9, 2020) (citations and internal quotations omitted).

[40] *Id.* (citations omitted).

[41] *Id.* (citations omitted).

[42] 18 U.S.C. § 1292(b).

[43] *IBT Emp. Grp. Welfare Fund v. Compass Mins. Int'l, Inc.*, 723 F. Supp. 3d 1053, 1057 (D. Kan. 2024) (citation omitted).

[44] *Id.*

[45] *Id.*

has usually relied on the party showing persuasive differing judicial opinions on the issue, even if those opinions are outside the Tenth Circuit.[46]

Naturally, the parties here disagree on whether Plaintiff presents a colorable argument in support of his position. Although the Court has rejected Plaintiff's arguments, the Court is inclined to agree that Plaintiff's argument based upon *Dietz* is colorable. In addition, Plaintiff cites the law concerning the availability of a private cause of action under the FMCSRs in other federal venues that differ from this District's approach.[47] In light of these differing judicial opinions, the Court determines Plaintiff meets his burden to demonstrate a substantial ground for a difference in opinion.

### 3.    *Materially Advance the Ultimate Termination of Litigation*

The third section 1292(b) requirement is that an immediate appeal may materially advance the ultimate termination of the litigation.[48] This requirement is met where an immediate appeal "would eliminate the need for a trial, eliminate complex issues so as to simplify the trial, or make discovery easier and less costly."[49] In addition:

> If the litigation will be conducted in substantially the same manner regardless of the decision, an immediate appeal will not advance the termination of the litigation. This element turns on pragmatic considerations, assessed by reviewing the procedural and substantive status of the case, the extent of the parties' preparation for trial, and the nature and scope of the requested relief.[50]

---

[46] *Id.* at 1057 n.12 (collecting cases).

[47] Doc. 53 at 4 n.1 (collecting cases).

[48] 28 U.S.C. § 1292(b).

[49] *Raymond v. Spirit Aerosystems Holdings, Inc.*, 2019 WL 1922170, at *2 (D. Kan. Apr. 30, 2019) (citing *XTO Energy, Inc. v. ATD, LLC*, 189 F. Supp. 3d 1174, 1194 (D.N.M. 2016)) (internation citations omitted).

[50] *Id.*

Turning to the procedural and substantive status of this case, the Court first notes that Counts I and II of Plaintiff's Second Amended Complaint remain. Because these Counts remain, discovery will remain the same regardless of the Court's ruling on Count III, a point which Plaintiff concedes. The Court also notes that discovery is still ongoing and other dispositive motions regarding Counts I and II have not yet been filed. Given this, the Court is inclined to agree with WFX that certification of an interlocutory appeal is more likely to delay litigation than advance it as certifying an appeal would require the parties to litigate this case in two forums simultaneously. Further, the Court notes that Count III asserted a claim for attorneys' fees, which is largely collateral to the merits of Plaintiff's case. Judicial economy would be best served on this matter in a comprehensive appeal to the Tenth Circuit after a full, final judgment has been rendered.[51] Thus, the Court determines that Plaintiff has not met his burden to demonstrate that an immediate appeal may materially advance the termination of the litigation.

Plaintiff has not met his burden to demonstrate that all three of section 1292(b)'s substantive criteria are met. Accordingly, the Court exercises its discretion and denies Plaintiff's request to certify an interlocutory appeal.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Reconsideration (Doc. 52) of the Court's Order Dismissing Count III of Plaintiff's Second Amended Complaint is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for a Certificate of Appealability (Doc. 53) is **DENIED**.

---

[51] Plaintiff indicates a favorable ruling by the Tenth Circuit on interlocutory appeal would improve settlement discussions between the parties. Because the Court agrees with other federal district courts that an "interlocutory appeal is not a settlement-inducing device," the Court is not persuaded by Plaintiff's speculative settlement argument. *See West v. Bam! Pizza Mgmt., Inc.*, 2025 WL 2879940, at *9 (D.N.M. Oct. 9, 2025) (internal brackets omitted) (citing *Guidotti v. Legal Helpers Debt. Resol., L.L.C.*, 2017 WL 89556, at *3 (D.N.J. Jan. 9, 2017)).

**IT IS SO ORDERED.**

Dated this 6th day of March, 2026.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE